UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br><br>MARK TRUJILLO,<br>EMILY TRUJILLO,<br><br>Debtors. | Case No. 11-29274 EEB<br>Chapter 7 |

ORDER AND NOTICE OF HEARING FOR ORAL ARGUMENT AND REQUEST FOR SUPPLEMENTATION REGARDING ALLEGED STAY VIOLATION BY ATTORNEY OF GARNISHING CREDITOR

THIS MATTER has come before the Court on the Debtors' "Motion for Order to Show Cause Why Charles B. Darrah & Associates, LLC Should Not be Held in Contempt for Violating the Automatic Stay Order," and the Response of Charles B. Darrah & Associates, LLC ("the Law Firm").  At a non-evidentiary hearing, the parties agreed to submit this matter on briefs.  Having reviewed the briefs and applicable law, the Court finds that oral argument and/or supplementation of the facts would be of assistance to the Court.  The Court has outlined below its preliminary analysis of this matter so that the parties will have a fuller understanding of the questions that the Court would like the parties to address in oral argument.

    I.    **Background**

According to an adversary complaint filed by the Debtors' Chapter 7 trustee in Case No. 12-1080, Legal Collection Co. LLC (the "Creditor") obtained a judgment against Mr. Trujillo in the amount of $19,664.37 in a Colorado state court action on August 24, 2007.  The Law Firm served a valid, continuing writ of garnishment on Mr. Trujillo's employer. According to the trustee's complaint, the Creditor received approximately $2,000 in garnished wages during the ninety days preceding the bankruptcy filing.  The trustee sued the Creditor to recover this amount and then shortly thereafter filed a notice of dismissal, stating that he had received full payment of the amount sought in the complaint from the Creditor.

While the trustee has received full satisfaction from the return of garnished funds, the Debtors have not.  The Debtors complain that the post-petition action of the Law Firm violated the automatic stay and they seek damages from the Law Firm.  In particular, they complain of its "inaction" in failing to turnover Mr. Trujillo's pre-petition wages received by the Law Firm post-petition.  The Law Firm counters that it had no obligation to return these funds because its client held a valid lien on them. The following facts are relevant to the stay violation allegations.

On August 12, 2011, the Debtors filed their Chapter 7 petition.  They immediately notified Mr. Trujillo's employer of the bankruptcy filing.  Their attorney also listed the

1

garnishment activity on the Debtors' Statement of Financial Affairs, but he neglected to include this debt in their schedules.  Consequently, neither the Creditor nor the Creditor Attorney appeared on the mailing matrix and they did not receive the initial notice of the bankruptcy filing from either the Court or the Debtors.

Despite the fact that his employer had notice of the bankruptcy filing, Mr. Trujillo's employer withheld funds from his August 18, 2011 paycheck.  This paycheck covered the last pre-petition pay period that ended August 11, 2011.  The Law Firm received these garnished funds on August 22, 2011.  That afternoon Debtors' counsel telephoned the Law Firm to demand their return and the termination of the continuing writ of garnishment. This was the first time that the Law Firm and its client learned of the Debtors' bankruptcy filing.  In response, on August 24, 2011, the Law Firm delivered a release of the writ of garnishment to Mr. Trujillo's employer.  It did not, however, return the funds garnished from the last pay period in the amount of $335.80.

From August 22, 2011 until September 27, 2011, Debtors' attorney contacted the Law Firm several times, demanding the return of these funds.  At one point, one of the employees of the Law Firm asked whether the garnished funds were attributable to a pre-petition pay period and indicated that, if they were, then his client "may have a prior garnishment lien right" to these funds.  He assumed the Debtors' attorney would get back to him with this information.  When the Debtors' attorney called back, his call was directed to another employee, who indicated that she would look into the matter and return his call.  When his telephone calls did not secure the release of the funds, the Debtors' attorney filed the instant Motion on September 27, 2011, seeking to sanction the Law Firm for violating the Debtors' automatic stay.

### II.     Issues for Oral Argument/Supplementation

**A.**  The parties to this matter have never informed the Court of the filing of the trustee's adversary proceeding or its outcome.  The Court only learned of these facts through a review of the docket in connection with this matter.  Thus, the Court does not know whether the $335.80 in funds received by the Law Firm on August 22, 2011 have now been returned by the Creditor. It is possible that the trustee only sued for, and received payment of, the funds garnished and *received pre-petition*. Since the Law Firm received the $335.80 of garnished funds *post-petition,* it is possible that these funds remain in the hands of the Law Firm. **The Court understands that the Debtors seek damages in addition to the return of the garnished funds, but the parties should be prepared to inform the Court whether the garnished funds have already been turned over to the trustee.**

**B.**  The Debtors contend that the funds in question should have been returned to them as opposed to the trustee.  Section 542(a) requires an entity holding either "property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title," to deliver the property *to the trustee.*  Thus, even if the debtors claim an exemption in the funds, the statute mandates turnover to the trustee.  **On what authority do the Debtors rely in claiming the funds should have been given directly to them?**

**C.  Is the exemption claimed by the Debtors on Schedule C for "checking**

**Account at Wells Fargo" intended to exempt these garnished funds? Is there another exemption that covers these funds? Assuming that the Debtors have properly claimed an exemption or could do so through an amended Schedule C, on what basis would the garnished funds fall within the 75% exemption applicable to wages? Do not the garnished funds represent the 25% of Mr. Trujillo's wages that are not exempt? The Debtors should be prepared to explain to the Court whether they claim these funds are exempt and on what basis.**

**D.** Under 11 U.S.C. § 541(a)(1), the filing of a bankruptcy petition creates an estate that includes "all legal or equitable interests of the debtor in property as of the commencement of the case." In *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309 (1983), the Supreme Court held that the reach of § 541 was broad enough to include property that had been seized by a creditor prior to the petition date. In the present case as well, § 541 encompasses all of Mr. Trujillo's wages even though a portion of them may be subject to a pre-petition garnishment lien. Mr. Trujillo still held an interest in the garnished portion on the date of the petition. Colo. R. Civ. P. 103, Section 6 (a)(1) provides:

> If a judgment debtor objects to the initial *or a subsequent calculation of the amount of exempt earnings*, the judgment debtor shall have five (5) days from the receipt of the copy of the writ of garnishment *or calculation of the amount of exempt earnings for subsequent pay periods*, within which to resolve the issue of such miscalculation by agreement with the garnishee.

(emphasis added). Thus, even though a continuing garnishment was in effect, the emphasized language in this rule provides that with each paycheck to be garnished, a judgment debtor has an opportunity to object. Mr. Trujillo would have received a "subsequent calculation of the amount of exempt earnings" with his paycheck on August 18, 2011. He still had a right to object to this garnishment within five days. Until the time has passed within which a judgment debtor may claim exemptions or otherwise lodge an objection, the garnishment is not considered final. *Nolan v. District Court*, 195 Colo. 6, 9, 575 P.2d 9, 11 (Colo. 1978). **Does the Law Firm dispute that Mr. Trujillo had a continuing interest in the funds as of the date of the bankruptcy filing? If so, on what basis? Do the Debtors dispute that the Creditor had a lien on the garnished funds as of the date of the bankruptcy filing? If so, on what basis?**

**E.** If Mr. Trujillo retained an interest in the funds on the petition date, his interest fell under the protective umbrella of the automatic stay imposed by § 362(a). Under this statutory framework, once a debtor informs his creditors of his bankruptcy filing, he is not required to do anything else. The automatic stay operates as its name states "automatically" to enjoin further collections actions for as long as the automatic stay remains in effect. At the conclusion of the typical chapter 7 case, the automatic stay is replaced by the discharge injunction set forth in § 727. The discharge injunction eliminates the debtor's personal liability for the debt owed to the creditor (unless it is a non-dischargeable debt), but it does not eliminate any lien rights that may exist.

Despite the fact that personal liability has been extinguished, a creditor holding lien rights may proceed to enforce its lien, but only after the property in question has ceased to be "property

of the estate." 11 U.S.C. § 362(c)(1). Property ceases to be property of the estate when it vests in the debtor at confirmation of a plan of reorganization or when it is abandoned by the Chapter 7 trustee in compliance with § 554. In the case of property that a debtor may exempt under § 522, the property is initially considered "property of the estate." Once a debtor claims an exemption in the property, and the deadline passes for lodging an objection to the exemption, or the objection is lodged but overruled, the exemption becomes final and the property ceases to be "property of the estate" and reverts to its pre-bankruptcy status as "property of the debtor." Fed. R. Bankr. Rule 4003(b)(1); *In re MWangi*, 432 B.R. 812, 821 (9th Cir. BAP 2010). If a judicial lien, such as the Creditor's lien, impairs a debtor's exemption rights, he may seek to avoid the lien under § 522(f). On the other hand, if an exemption does not cover the particular property interest at issue, then, in a Chapter 7 case, the trustee may administer the asset for the benefit of the estate, subject to whatever lien rights exist. It remains property of the estate until formally abandoned or the estate has been fully administered and closed.

If a lien creditor believes its interests may be harmed in the interim, is not the proper remedy for the creditor to seek: (a) adequate protection for its lien rights under § 361, (b) relief from the automatic stay to enforce its lien rights under § 362(d) in the usual course, or (c) an emergency hearing under § 362(f)? The Bankruptcy Code has created a delicate balance between the rights of a debtor and a lien creditor. It could have placed the burden on the debtor to first provide protection of the creditor's lien rights, but instead it gave the debtor automatic protection and placed the burden on the lien creditor to comply with the turnover statute. The Bankruptcy Code places the burden on the lien creditor to seek protection if its interests are imperiled.

**Does the Law Firm have any authority that would shift this burden back to the Debtors?** The Court is aware that in the case of *Citizens Bank v. Strumpf,* 516 U.S. 16, 116 S.Ct. 286 (1995), the Supreme Court held that a bank claiming set off rights did not violate the automatic stay by temporarily freezing the debtor's bank account until its motion to allow set off rights could be determined. But § 542(a) itself acknowledges an exception to the turnover obligation when the entity has setoff rights. No exception is provided simply because the creditor asserts a lien right in the property.

Moreover, in *In re Jackson,* 251 B.R. 597 (Bankr. D. Utah 2000), the court held that a creditor with lien rights on the debtor's vehicle, validly repossessed pre-petition, had the obligation to turn the vehicle over to the debtor once the debtor filed for bankruptcy protection. The creditor attempted to justify its refusal to turn over the car on the basis that its interest in the vehicle was not adequately protected. The debtor had not obtained insurance on the car nor offered adequate protection payments. The court rejected this justification and sanctioned the creditor for the stay violation.

> A creditor's duty to return a vehicle repossessed prepetition is not dependent on the receipt of adequate protection or proof of insurance. Because a creditor has immediate access to court pursuant to § 362(f) and § 363(e) in order to assure that adequate protection is provided, there is no reason for the creditor to delay in the turnover of estate property. This interpretation of § 542 is consistent with *Whiting Pools* . . . which places the burden of seeking adequate protection on the creditor. . . .

4

*Id.* at 600 (citations omitted); *see also In re Yates*, 332 B.R. 1 (10th Cir. BAP 2005).

The Court recognizes that this case is different from a case in which the creditor has a lien on a car.  **Would the Creditor in this case lose its lien on the funds by the simple act of turning the funds over to the trustee?  What authority would indicate this?**

**Even if the Creditor was at risk of losing its lien, isn't the creditor's remedy to move for an immediate hearing on its need for either adequate protection or stay relief?**

**F.**  The Debtors are seeking compensatory and punitive damages. **Do the Debtors have standing to seek damages for a stay violation if the garnished funds are non-exempt property?  On what authority do the Debtors rely?**

**G.  Even if the Debtors have standing, on what basis would the Debtors be entitled to receive punitive damages?**  In order for punitive damages to be awarded for a stay violation, the Law Firm must have acted with actual knowledge that it was violating a federally protected right or with reckless disregard of whether it was doing so.  *In re Diviney*, 225 B.R. 762, 776 (10th Cir. BAP 1998).  Even if this Court were to agree with the Debtors that the Law Firm has violated the stay, there is a split of authority as to whether a garnishment lien creditor must turn over the funds.  For cases finding stay violation by the garnishing creditor refusing to turn over garnished funds, see *In re Roche*, 361 B.R. 615 (Bankr. N.D. Ga. 2005); *In re Aughenbaugh*, 2002 WL 33939738 (Bankr. D. Idaho 2002); *In re Pulliam*, 262 B.R. 539 (Bankr. D. Kan. 2001); *In re Zunich*, 88 B.R. 721 (Bankr. W.D. Pa. 1988).  For cases reaching the opposite conclusion, see *In re Giles*, 271 B.R. 903 (Bankr. M.D. Fla. 2002); *In re Miller*, 2011 WL 6736070 (Bankr. D. Colo. 2011).  **Given this split of authority, including a finding of no stay violation by another judge in this district, how could the Court find that the Law Firm acted with "actual knowledge that it was violating a federally protected right or with reckless disregard of whether it was doing so?"**

### III.     Conclusion

It is hereby ORDERED that the parties shall appear for oral argument on **Friday, April 27, 2012 at 1:30 p.m., in Courtroom C501**, United States Bankruptcy Court for the District of Colorado, Byron Rogers Courthouse, 1929 Stout Street, Denver, Colorado.

DATED this 5th day of April, 2012.

BY THE COURT:

Elizabeth E. Brown
United States Bankruptcy Judge